

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

February 20, 1961

Honorable W. W. Kilgore                    Opinion No. WW-995
County Attorney
Victoria County                            Re: Liability for expenses in
Victoria, Texas                                holding elections in water
                                               control and improvement
                                               districts.

Dear Sir:

You have requested an opinion on who should pay the expenses, including compensation of judges and clerks, for holding elections for water control and improvement districts. The district directly concerned in your request lies wholly within Victoria County. You have referred to Article 7880-26, Vernon's Texas Civil Statutes, and Articles 3.08 and 7.12 of Vernon's Texas Election Code, and from these statutes you have concluded that Victoria County should pay the expenses of this district's elections.

Article 7880-26 provides that all elections held by a water control and improvement district "shall be ordered, held and conducted in accordance with the laws of this State for the holding of general elections for State and county officers, except as herein otherwise provided."

Article 3.08 of the Election Code, insofar as it is pertinent, reads:

"The pay of judges and clerks of general and special elections shall be determined by the Commissioners Court of the county where such services are rendered, and in primary elections by the County Executive Committee of the party conducting such primary election, * * *. The compensation of judges and clerks of general and special elections shall be paid by the County Treasurer of the county where such services are rendered upon order of the Commissioners."

Article 7.12 of the Election Code reads:

"All expenses incurred in furnishing the sup-
plies, ballots, and booths in any general or special
election shall be paid for by the county, except
costs in municipal and school elections. All accounts
for supplies furnished and services rendered shall
first be approved by the Commissioners before they
are paid by the county."

After considering the background of these provisions in
the Election Code and their relation to other statutes, we have
arrived at the opinion that Articles 3.08 and 7.12 do not make the
county liable for the costs of elections held by water control and
improvement districts, and that the expenses of the elections are
to be paid by the district.

Water control and improvement districts are independent
political subdivisions of the State "and standing upon the same
footing as counties and other political subdivisions established
by law." Willacy County Water Control and Improvement District
No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936 (1944). They may
be formed without reference to county lines, and the territory of
a district may include any county or counties, or portions of a
single county or any number of counties. Art. 7880-4. The dis-
trict performs functions for the benefit of the territory which it
embraces and the residents of that territory, and its operations
have no direct connection with county affairs or the functions for
which county taxes are collected. The county commissioners court
and other county officers have a part in the formation of districts
embraced wholly within a single county (Arts. 7880-10 to 7880-20),
but after a district has been created, its affairs are completely
divorced from county control. The district has its own governing
body and its own operating funds. The directors of the district
order its elections, appoint the election officers, canvass the
returns, and in all other respects have complete control over the
district elections. Arts. 7880-27 to 7880-29.

In view of the independent nature of a district, the
logical expectation would be that the costs of its elections
should be borne by the district rather than by the county or coun-
ties in which it is situated. The statutes providing for the
creation and functioning of these districts (Chapter 3A, Title 128,
V.C.S.) do not expressly state that election expenses shall be paid
by the district, but the reasonable conclusion would be that the
Legislature intended for the district to pay these expenses and
that they were included within the provision for payment of "all
expenses, debts and obligations" and "all expenses of maintenance,
repair and operation of the district." Arts. 7880-102 and 7880-
103.

Article 7880-23 provides that before the district shall incur any indebtedness other than for its operation and the holding of an election, the directors shall call an election on confirmation of its organization. Article 7880-24 provides that if the vote is against confirmation, the district shall have no further authority except that any debts incurred shall be paid and the organization shall be maintained until all such debts are paid. These provisions would not necessarily have to be construed as meaning that the expense of the election is an indebtedness against the district rather than an indebtedness which the directors are authorized to incur against the county or counties in which it is located, but in our opinion this is the more reasonable construction. By even stronger implication, expenses of elections ordered by the directors subsequent to confirmation would be indebtednesses against the district.

Our construction of Article 7880-26, quoted earlier in this opinion, is that it refers to the procedures for ordering and conducting the elections and that it was not intended to fix liability for the expenses of the elections. This conclusion is supported by comparison with similar provisions in other statutes.

In the statutes regulating water improvement districts (Chapter 2 of Title 128), Article 7691 provides that "the manner of conducting all elections herein provided for shall be governed by the election laws of the State of Texas, except as herein otherwise provided," and Article 7719 provides that "all elections held in water improvement districts shall be held in accordance with the provisions of the general election laws of this State, except as herein otherwise provided." There is no express provision that expenses of all district elections shall be paid by the district, but we find a clear implication to this effect in Article 7622b, relating to annexation of territory not embraced in a district, which was enacted in 1941 and which amounts to a legislative construction of then existing law. This statute provides that separate elections on the question of annexation shall be held within the boundaries of the district and within the territory to be annexed, and "all expenses of each of said elections shall be paid by the district." This provision apparently presupposes that the district would ordinarily be liable for expenses of elections held within the district, and was inserted in the statute to clarify the district's liability for the expenses of the election held outside its boundaries.

Of course, the statutes on water improvement districts are not applicable to water control and improvement districts, but the close similarity of these two types of districts makes those

statutes pertinent in arriving at a proper construction of Article 7880-26. A further example of liability of another similar type of district for its election expenses is found in Chapter 4 of Title 128, relating to fresh water supply districts. Article 7934 provides that "all expenses incident to calling and holding all elections except the first authorized by this chapter, shall be paid out of any district funds, except interest and sinking fund for bonds." (The expenses of the first election are paid out of a deposit accompanying the petition for creation of the district. Art. 7883.) Other examples may also be found where election expenses of similar districts expressly or impliedly are to be paid out of district funds or out of deposits. We have not found any instance where it is expressly provided in statutes relating to districts of this nature that the county should bear the expenses of the district elections.

In the absence of Articles 3.08 and 7.12 of the Election Code, we think the statutes regulating water control and improvement districts clearly should be construed as making the election expenses a charge against the district. We come, then, to the question of whether these provisions in the Election Code should be construed as making the county liable for the expenses.

Before proceeding with an examination of Articles 3.08 and 7.12, it should be observed that the Election Code of 1951 is a direct descendent of the Terrell Election Law (Ch. 11, Acts of the 29th Leg., 1st C.S., 1905) and retains much of the same language used in the original law. Except for provisions relating to party nominations, both laws were designed and written primarily with reference to elections for state, district, county and precinct officers and other elections which are conducted by the county. Municipal elections, and to a lesser extent school elections, receive some attention, but in the main the provisions are worded in terms of elections which are conducted by the counties. The absence of any mention in the Terrell Election Law of elections held by political subdivisions other than counties, cities and school districts is explained by the fact that prior to 1905 there were no other subdivisions which held elections. Conservation districts were first created in 1905, following the amendment of Article III, Section 52 of the Constitution in 1904, and reached a status of widespread existence only after the adoption of Article XVI, Section 59 of the Constitution in 1917. To construe the term "general and special elections" in statutes which have brought forward the original provisions of the Terrell Election Law without substantial change as applying to elections held by other political subdivisions would do violence to the intent of these statutes, which were not written with these types of elections in mind.

Article 3.08 of the Election Code provides that the compensation of judges and clerks of general and special elections shall be determined by the commissioners court and shall be paid by the county treasurer. These provisions, we think, are applicable only to elections which are ordered or held under the supervision of county officers.

Article 7.12 of the Election Code is derived from Section 147 of the Terrell Election Law, which originally read as follows:

"All expenses incurred in providing voting booths, stationery, official ballots, wooden or rubber stamps, tally sheets, polling lists, instruction cards, ballot boxes, envelopes, sealing wax and all other supplies required for conducting a general or special election shall be paid for by the county, except the cost of supplying booths for cities, which shall be provided for as required by former laws; provided, that all accounts for supplies furnished or services rendered shall first be approved by the county commissioner's court, except the accounts for voting booths for cities."

This section did not apply to city elections, which were provided for in Section 45 of the Terrell Election Law, stating that "the expense of all city elections shall be paid by the city in which same are held." (Cf. Art. 7.13, Election Code.) At that time, and continuing until 1935, counties were liable for expenses of school district elections. It is thus seen that these two sections covered all general and special elections which had theretofore been provided for in this State, namely, elections held by counties, cities, and school districts. The question we are confronted with in this opinion is whether the scope of Section 147, as brought forward through the revisions of 1911 and 1925 into Article 7.12 of the Election Code, has been enlarged to include general and special elections held by other political subdivisions.

Section 147 excepted "the cost of supplying booths for cities, which shall be provided for as required by former laws." Voting booths were required only at polling places within cities of 10,000 or more inhabitants (cf. Art. 7.01, Election Code), and under "former laws" the costs were borne equally by the State and by the county. Art. 1787, R.C.S. 1895. The purpose of this provision was not to except city elections from the elections for which the county was liable (this was done by Section 45), but to relieve the county from full liability for expenses of furnishing voting booths in the elections for which it was required to provide supplies.

Section 147 remained unchanged in the revisions of 1911 and 1925, except that the language "which shall be provided for as required by former laws" was omitted in the 1925 revision. Art. 2988, R.C.S. 1911; Art. 2996, R.C.S. 1925. As the law existed up to 1951, there could have been no substantial ground for holding that re-enactment of the original provisions of 1905 had extended liability of counties to elections of political subdivisions such as water control and improvement districts, whose creation had been authorized subsequent to 1905. It is evident that Article 2996, R.C.S. 1925, was not intended to have this effect, since Article 7934 of the same revision expressly provided that election expenses of fresh water supply districts were to be paid out of district funds.

When Article 2996 was codified into Article 7.12 of the 1951 Election Code, the change made was to substitute "except costs in municipal and school elections" for the former provision, "except the cost of supplying booths for cities." Under the law as it then existed, other statutes expressly provided that the costs of city elections were to be paid by the city (Art. 2997, R.C.S., 1925, now Art. 7.13 of the Election Code) and that the costs of school elections were to be paid by the school district (Art. 2746b, V.C.S., enacted in 1935). It is our opinion that this change was merely a statement of existing law covering elections which had formerly been subject to Articles 2996 and 2997, and was not intended to enlarge the types of elections for which the county was liable. This construction is in accord with the historical comment under Article 7.12 of Vernon's Annotated Election Code, prepared by the Counsel for the Election Code Commission (see V.A.T.S., Vol. 9, p. III), which states that no change was made in the law.

Without further indication of an intent to make the county liable for expenses of elections held by distinct, independent political subdivisions such as water control and improvement districts, we are unwilling to say that the Legislature intended to place this liability on the counties by the changes made in Article 7.12. Accordingly, we hold that the expenses of the district elections, including the pay of election judges and clerks, should be paid by the district.

## SUMMARY

A county is not liable for the expenses of elections held by water control and improvement districts situated within the county. Each

district pays the expenses of its elections.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Mary K. Wall

Mary K. Wall
Assistant

MKW:afg

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Jerry H. Roberts
Virgil Pulliam
Iola Wilcox

REVIEWED FOR THE ATTORNEY GENERAL
BY: Morgan Nesbitt